DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Johnny Shinholster, appeals his conviction out of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On April 5, 2004, appellant was indicted on one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1), a felony of the first degree. Prior to trial on February 14, 2005, the count was amended to reduce the amount of crack cocaine at issue and to reduce the offense level to a felony of the second degree. The matter proceeded to trial. At the conclusion of the State's case-in-chief, appellant moved for judgment of acquittal pursuant to Crim.R. 29. The trial court denied the motion, and the defense then rested. At the conclusion of trial, the jury found appellant guilty. The trial court sentenced appellant accordingly. Appellant timely appeals, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"SHINHOLSTER WAS DENIED HIS CONSTITUTIONAL RIGHT OF CONFRONTATION UNDERCRAWFORD V. WASHINGTON WHEN REPEATED REFERENCES TO OUT OF COURT STATEMENTS BY A CONFIDENTIAL INFORMANT WERE USED AGAINST HIM."
 {¶ 3} Appellant argues that the trial court erred in admitting testimonial hearsay statements of the State's confidential informant in violation of appellant's constitutional right to confront witnesses against him. This Court disagrees.
 {¶ 4} The Sixth Amendment to the United States Constitution accords the accused in all criminal prosecutions the right to be confronted with the witnesses against him. The United States Supreme Court has held that the admission of testimonial hearsay statements violates an accused's rights under the Sixth Amendment Confrontation Clause. Crawford v.Washington (2004), 541 U.S. 36, 69, 158 L.Ed.2d 177 (holding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.")
 {¶ 5} In this case, a review of the trial transcript indicates that the State did not elicit any testimony from its witnesses regarding any statements made by the confidential informant. The State's various witnesses testified that the confidential informant was transmitting any conversations taking place when he and Nick Ingarra were awaiting the arrival of Virginia Noguez and appellant to make a drug sale. The State's witnesses, however, did not testify regarding any statements by the confidential informant. In fact, Detective Michael Schmidt of the Akron Police Department testified that he was monitoring the audio transmissions emanating from the vehicle in which the confidential informant and Nick Ingarra were waiting, but the detective only testified regarding Mr. Ingarra's statements. As Mr. Ingarra testified for the State, appellant had the opportunity to confront and question him.
 {¶ 6} Because the trial transcript indicates that none of the State's witnesses testified as to any statements made by the confidential informant, the rights accorded by the Sixth Amendment's Confrontation Clause were not implicated. Accordingly, appellant was not denied his constitutional right to confront witnesses against him. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"[THE] TRIAL COURT ERRED IN DENYING DEFENDANT'S RULE 29 MOTION TO DISMISS BECAUSE THE ELEMENTS OF TRAFFICKING WERE NOT SHOWN BY THE PROSECUTION."
 {¶ 7} Appellant argues that the trial court erred by denying appellant's motion for judgment of acquittal pursuant to Crim.R. 29. This Court disagrees.
 {¶ 8} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing a trial court's ruling on a Crim.R. 29(A) motion for acquittal, this Court construes the evidence in a light most favorable to the State. State v. Wolfe (1988),51 Ohio App.3d 215, 216.
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Galloway (Jan. 31, 2001), 9th Dist. No. 19752.
 {¶ 9} The test for sufficiency requires a determination of whether the State has met its burden of production at trial. State v. Walker (Dec. 12, 2001), 9th Dist. No. 20559; see, also, State v. Thompkins (1997),78 Ohio St.3d 380, 390.
 {¶ 10} Appellant was convicted of one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1), which states that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]" Appellant argues that the State presented no evidence to prove that appellant sold or offered to sell crack cocaine.
 {¶ 11} At trial, Virginia Noguez testified that she had previously purchased drugs from appellant and that she arranged for appellant to provide a quantity of crack cocaine for purchase by her boyfriend's (Nick Ingarra) friend. Ms. Noguez testified that she picked up appellant in her car on the date of the proposed sale and drove him to two locations so that appellant could secure the appropriate quantity of crack cocaine. She continued that, when appellant left the second house, he told her "It's good, let's go." Ms. Noguez testified that she understood appellant's comments to mean that he had secured the crack cocaine for the impending sale. She testified that she then drove appellant to a restaurant parking lot, where Mr. Ingarra and the buyer were to meet them. Ms. Noguez testified that she left appellant in the car while she entered the restaurant to use the restroom. She testified that she passed Mr. Ingarra in the parking lot as he walked over to her car.
 {¶ 12} Nick Ingarra testified that he coordinated with Ms. Noguez to set up a sale of crack cocaine by appellant to Mr. Ingarra's friend. He testified that he called Ms. Noguez when she and appellant failed to appear at the designated location and time to determine what the problem was. Mr. Ingarra testified that Ms. Noguez and appellant finally drove into the parking lot, and Ms. Noguez left the vehicle. Ingarra testified that appellant was sitting in the passenger seat of Ms. Noguez' car and that he (Ingarra) entered the vehicle and sat in the driver's seat.
 {¶ 13} Mr. Ingarra testified that he and appellant made cursory greetings to one another, then appellant pulled out a package of drugs from his pocket and dropped it on the floor on the driver's side. He testified that he picked up the drugs, put them in his pocket and began to exit the vehicle. Mr. Ingarra testified that appellant then asked him where the money was. Ingarra testified that he told appellant that his friend had the money. When Ingarra exited the vehicle, the police arrested him, appellant and Ms. Noguez.
 {¶ 14} Detective Michael Gilbride of the Akron Police Department testified that he learned that a subject, specifically Nick Ingarra, could arrange for delivery of a large amount of cocaine. The police department arranged for its confidential informant to coordinate a drug sale. Detective Gilbride testified that, based on his investigation, he expected a white female and another unidentified subject to arrive in the designated Scorchers parking lot in a green Ford Escort with the drugs for sale to the confidential informant. He testified that he saw the green Escort pull into the parking lot, and he then relied on the other ten to twelve investigating officers to observe the scene.
 {¶ 15} Detective Michael Schmidt of the Akron Police Department testified that he was part of this investigation. He testified that he observed a green Ford Escort enter the Scorchers parking lot and a white female subsequently exit the vehicle. He continued that he then saw Mr. Ingarra approach the Escort and enter it. Detective Schmidt testified that Mr. Ingarra exited the Escort after approximately 30 seconds. Numerous police cars and officers then entered the parking lot. The police arrested Mr. Ingarra. Detective Schmidt testified that the police then found appellant in the green Escort.
 {¶ 16} Sergeant Jason Malick of the Akron Police Department testified about his involvement in this investigation. Sergeant Malick testified that he was in uniform in a marked police car, which was to enter the parking lot and make arrests. He testified that he arrested Mr. Ingarra after he exited the green Escort. Sergeant Malick testified that he found approximately an ounce of cocaine in Ingarra's pocket during a pat down.
 {¶ 17} Officer Ted Male of the Akron Police Department testified that he was involved in the investigation into the sale of cocaine in the Scorchers parking lot. Officer Male testified that, as a uniformed police officer, he was directed to "move in and effectuate an arrest" after the delivery of the crack cocaine. He testified that he arrested appellant upon finding him in the passenger seat of the green Escort.
 {¶ 18} Finally, Officer Donny Williams of the Akron Police Department testified that his was the last marked police car to enter the scene of the drug sale investigation. He testified that he understood that Nick Ingarra was supposed to buy crack cocaine from a source. Officer Williams testified that he observed appellant sitting in the vehicle that Mr. Ingarra exited.
 {¶ 19} Based on the evidence presented at trial, this Court finds that there was sufficient evidence, when construed in a light most favorable to the prosecution, to convince an average person that appellant was guilty of trafficking in cocaine beyond a reasonable doubt. Both Ms. Noguez and Mr. Ingarra expected appellant to obtain a large quantity of crack cocaine for sale to Ingarra's friend. Ms. Noguez drove appellant to the proposed sale location after appellant indicated that he had obtained the drugs. Mr. Ingarra admitted that he entered the car in which appellant waited and that appellant dropped the drugs on the floor of Ingarra's side of the car. Mr. Ingarra testified that appellant inquired about the money for the drugs. Various police officers involved in the investigation testified that appellant was found in the car from which Mr. Ingarra had just exited. The police found an ounce of crack cocaine on Mr. Ingarra immediately after he left appellant in the car. Mr. Ingarra testified that appellant inquired about money for the drugs and that appellant understood that Ingarra was going to retrieve the money from his friend for whom the drugs were obtained. Under these circumstances, this Court finds that the trial court did not err by finding that the State presented sufficient evidence to submit the matter to the jury and, therefore, by denying appellant's oral motion for acquittal pursuant to Crim.R. 29(A). Appellant's second assignment of error is overruled.
 III. {¶ 20} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, which convicted and sentenced appellant on one count of trafficking in cocaine, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, P.J. Whitmore, J. Concur